(No. 20396.—

THE PEOPLE *ex rel.* Asa P. Dyer *et al.* Appellants, *vs.* M. F. WALSH, Director of the Department of Registration and Education, Appellee.

*Opinion filed October 23, 1931—Rehearing denied Dec. 2, 1931.*

Ray E. Lane, for appellants.

Oscar E. Carlstrom, Attorney General, and Merrill F. Wehmhoff, for appellee.

Mr. Commissioner Edmunds reported this opinion:

On March 21, 1930, a petition on the relation of Asa P. Dyer and others was filed in the circuit court of Sangamon county praying that M. F. Walsh, as director of the Department of Registration and Education, be commanded by writ of *mandamus* to issue to petitioners licenses entitling them to practice the treatment of human ailments without the use of drugs or medicines and without operative surgery. To this petition a demurrer was filed. The cause is here on appeal from a judgment sustaining the demurrer and dismissing the petition.

The petition which is thus before us does not allege facts showing a compliance with the Medical Practice act, which provides that no person shall practice medicine or any of its branches, or midwifery, or any system or method of treating human ailments without the use of drugs or medicines and without operative surgery, without a valid existing license so to do, and which further provides that no person, except as otherwise provided in the act, shall receive such license unless he shall pass an examination of his qualifications therefor by and satisfactorily to the Department of Registration and Education. (Cahill's Stat. 1929, chap. 91, pars. 2, 3.) The position taken by the petitioners here and in the circuit court is that the act is unconstitutional and that they are entitled to receive licenses without examination and irrespective of its provisions.

Before considering the contentions advanced by petitioners it is in order to call attention to the fact that this act

has been upheld in a number of cases where its validity was under attack from various angles. (*People* v. *Witte*, 315 Ill. 282; *People* v. *Walder*, 317 id. 524; *People* v. *Hawkinson*, 324 id. 285; *People* v. *McGinley*, 329 id. 173; *People* v. *Jiras*, 340 id. 208.) In the *Walder case* we said: "The Medical Practice act of 1923 recognizes the different methods of treating human ailments and prescribes reasonable and uniform regulations for testing the qualifications of persons who desire to practice medicine in all of its branches and of persons who desire to practice some limited form of treating human ailments. This act meets the constitutional objections which rendered void the earlier medical practice acts and is valid legislation."

The first contention is that the act deprives petitioners of liberty and property without due process of law, because its effect is to take away from them the right to practice the profession of chiropractic, which they were practicing at the time of its passage. This contention is not well taken. The right to pursue a lawful calling, business or profession cannot be arbitrarily taken away, but there is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the State for the protection of society. Few professions require more careful preparation on the part of those who follow them than that of medicine. Everyone may have occasion to consult a physician, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the State to exclude from practicing the treatment of human ailments those who have not such a license or who are found upon examination not to be fully qualified. The same reasons which control in imposing conditions, upon compliance with which such persons are al-

lowed to practice in the first instance, may call for further conditions as new modes of treating disease are discovered, or a more thorough acquaintance is obtained with the remedial properties of vegetable or mineral substances, or a more accurate knowledge is acquired of the human system and of the agencies by which it is affected. As the Supreme Court of the United States said in *Lambert* v. *Yellowley,* 272 U. S. 581 : "There is no right to practice medicine which is not subordinate to the police power of the States." (See, also, *Dent* v. *West Virginia,* 129 U. S. 114; *Graves* v. *Minnesota,* 272 id. 425; *Williams* v. *People,* 121 Ill. 84; *Frazer* v. *Shelton,* 320 id. 253; *People* v. *Witte, supra; State* v. *Heffernan,* 40 R. I. 121, 100 Atl. 55; *Price* v. *State,* 168 Wis. 603, 171 N. W. 77.) The Medical Practice act only requires that whoever assumes, by offering to the community his services for the treatment of human ailments, that he possesses the necessary qualifications of learning and skill, shall present evidence of it by a license from a body designated by the State as competent to judge of his qualifications.

The contention is made that the act discriminates between chiropractors and those practicing medicine in all its branches, in that the latter, if practicing at the time the law was passed, are exempted from examination whereas chiropractors are not. We find no such exemption in the act. It does provide that "all licenses and certificates heretofore legally issued by authority of law in this State permitting the holder thereof to practice medicine, or to treat human ailments in any other manner, or to practice midwifery, and valid and in full force and effect on the taking effect of this act, shall have the same force and effect and be subject to the same authority of the department to revoke or suspend them as licenses issued under this act." (Cahill's Stat. 1929, chap. 91, par. 23.) Exemption from examination is thus, in effect, allowed to all those holding licenses at the time the act was passed, whether such licenses were to practice

medicine or midwifery or to treat human ailments in any other manner. The power of the legislature to make such exemption cannot be questioned. *Dent* v. *West Virginia, supra; Williams* v. *People, supra; State* v. *Heffernan, supra; State* v. *Broden,* 232 N. W. (Minn.) 517.

Petitioners insist that there is a discrimination, in that the act imposes higher and more strict educational standards upon those treating human ailments without the use of drugs or medicines and without operative surgery than upon those practicing medicine in all its branches. The argument made in this connection appears to be based upon the fact that those treating human ailments without the use of drugs or medicines and without operative surgery who graduated after July 1, 1926, from a school teaching their system, are required to show that such school required, as a prerequisite to admission thereto, a four-year course of instruction in a high school, whereas those practicing medicine in all its branches who graduated from a medical school after the act became effective are required to show that such school required, as a prerequisite to admission thereto, a two-year course of instruction in a college of liberal arts or its equivalent. To hold that the standard of preliminary education thus imposed upon those treating human ailments without the use of drugs or medicines and without operative surgery is higher and more strict than that imposed upon those practicing medicine in all its branches would be to arrive at a conclusion opposed to that dictated by common knowledge of our educational system. Our view of the educational requirements prescribed by the Medical Practice act has already been expressed in certain of the earlier cases cited. In the *Witte case* we said: "An applicant for a license to practice any system or method of treating human ailments without the use of drugs or medicines and without operative surgery who is a graduate of a school in which the particular system or method of treatment is taught, whether before or after the passage of the act, is not required to

show any instruction whatever in any college of liberal arts. If a person chooses to fit himself for a particular system or method of treating human ailments and to limit his practice thereto the choice is voluntarily made. The educational requirements for such practice are not equal to those pre-scribed for the unrestricted practice of medicine." In the *Walder case* we said: "Taking into consideration the subject matter with which the legislature was dealing, we are of the opinion that the requirements applicable to the limited practitioner are not subject to the charge of being arbitrary and unreasonable but that they are liberal when compared with the requirements of the same act applicable to persons who desire to practice medicine in all of its branches."

A further contention is that the act operates as an *ex post facto* law, changing the status of petitioners and making them criminally liable for acts which they were lawfully performing before the law was enacted. The authorities do not support this contention. In *Gray* v. *Connecticut,* 159 U. S. 74, the defendant held a State pharmacist's license. A statute subsequently enacted provided that spirituous liquors could not be used in the preparation of pharmacists' compounds unless the pharmacist was the holder of a druggist's license from the county commissioners. A conviction under the statute was upheld. In *Hawker* v. *New York,* 170 U. S. 189, there was involved a statute, enacted in 1893, providing that any person who after conviction of a felony practiced medicine should be guilty of a misdemeanor. Defendant had been convicted of a felony in 1878. His conviction under the act was sustained. In *Reetz* v. *Michigan,* 188 U. S. 505, the court said: "It is further insisted that having once engaged in the practice, and having been licensed so to do, he had a right to continue in such practice, and that this statute was in the nature of an *ex post facto* law. The case of *Hawker* v. *New York, supra,* is decisive of this question. This statute does not at-

tempt to punish him for any past offense, and in the most extreme view can only be considered as requiring continuing evidence of his qualifications as a physician or surgeon." See, also, *Collins* v. *Texas,* 223 U. S. 288, and *Price* v. *State, supra.*

The judgment of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*