THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* LYNDON E. LEE, Defendant.

Court of Special Sessions, City of Mount Vernon, Westchester County, May 11, 1934.

* Schedule omitted.

*John J. Bennett, Jr., Attorney-General [Sol Ullman, Assistant Attorney-General, of counsel], for the plaintiff.*

*Joseph W. Bryan [Walter B. Kennedy of counsel], for the defendant.*

BERNSTEIN, J.   The defendant is charged with violating sections 1250, 1251 and 1263 of the Education Law of the State of New York, in that on various dates mentioned in the information and in the depositions accompanying same, he attempted to and did diagnose and treat certain persons mentioned in said information and depositions, for human ailments, diseases, pain, etc., and that such acts on his part constituted the practice of medicine in violation of the relevant sections of that law.   He demurs to the information on the following grounds: (1) That the person signing the information died since the issuance of the warrant; (2) that more than one crime is charged in the information; (3) that the information is not signed by the Attorney-General, it being maintained by the defendant that subdivisions 4 and 7 of section 1263 require same because they provide that the offense be prosecuted by the Attorney-General; (4) that the acts alleged in the information do not charge a crime because of the fact that the individual or individuals alleged to have been diagnosed, treated or operated upon are not named in the information; (5) that sections 1250, subdivision 7, 1251 and 1263 of the Education Law are unconstitutional in that (a) they deny to the defendant due process of law as defined by the Fourteenth Amendment of the Federal Constitution and article 1, section 6, of the New York State Constitution, and (b) they deny to the defendant the equal protection of the law guaranteed by the above amendment of the Federal Constitution.

The only plea to an information in a Court of Special Sessions is guilty or not guilty or former judgment of conviction or acquittal

of the crime charged. (Code Crim. Proc. §§ 332, 699, 700.) Defendant may, however, at any time move to dismiss the information on the ground that it fails to allege the crime charged or any crime. The demurrer, therefore, will be considered as such a motion.

An information is merely an allegation made to a magistrate that a crime has been committed by a designated person. It is the basis for the issuance of a warrant and for the jurisdiction of the court. In its form and substance it does not have to comply with the same strict formality as an indictment. Nevertheless, it must state facts sufficient to constitute a crime. The person signing the information is merely a witness or the person who informs the court that a crime has been committed and seeks by such information to have a warrant issued so that the court may hear and determine the crime charged. In this case such person was alive and appeared before the magistrate when the warrant for the defendant was issued and the latter brought into court. The court thereupon acquired jurisdiction over the defendant, and the death of that person, commonly known as the complaining witness, does not vitiate this proceeding nor terminate it. No more does such occurrence divest the court of jurisdiction over the defendant than would the death of any other witness which the prosecution might have at the time of the issuance of the warrant. (See Code Crim. Proc. §§ 145–149.) For the above-mentioned reasons, the court overrules the first ground of this motion.

The defendant is charged with practicing medicine unlawfully. " Practicing," as used in the statute under consideration, should be given the commonly accepted meaning of that word, viz., the habitual doing of certain things, the doing of an act more than once, and while one act of diagnosis or treatment might constitute the offense alleged, nevertheless the statute clearly indicates that repeated acts of diagnosis and treatment at different times and upon different persons constitutes the practice which the statute aims at and may be prosecuted as one offense. (See in this connection, *People* v. *Firth*, 157 App. Div. 492.)

Sections 278 and 279 of the Code of Criminal Procedure do not apply to this case.

This disposes of the second ground of defendant's motion.

To prosecute in the name of the People as provided by the Education Law does not necessarily mean that the prosecutor must be the informant or complaining witness or the person filing or making the charge. The commonly accepted meaning of prosecutor is one who takes charge of the case and performs the function of the trial lawyer for the People as does the district attorney in

the prosecution of crimes in the County and Supreme Courts and in the Courts of Special and General Sessions of the City of New York. I am, therefore, of the opinion that the statute has been complied with in respect to the third objection raised by the defendant.

The objection that the acts alleged do not constitute a crime because the individuals diagnosed, operated upon or treated are not named in the information, is disposed of by referring to the said information and the depositions accompanying the same which clearly show that many names are set forth therein, and for that reason this objection is overruled.

There remains for consideration the most important objection to the information, viz., that it does not set forth any crime or the crime alleged because the sections of the Education Law therein referred to are unconstitutional and void in that they deny to the defendant the equal protection of the laws and due process guaranteed by the Federal and State Constitutions. The relevant provision of the Federal Constitution is as follows: " nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (14th Amendt.)

The relevant provision of the State Constitution contained in article 1, section 6, is as follows: " No person shall be * * * deprived of life, liberty or property without due process of law."

This court, even though it is of inferior local jurisdiction, should not hesitate in passing upon the constitutionality of a law simply because it is such a court. If the rights of a defendant are violated because of a provision of law which is unconstitutional, any court should have no hesitancy in saying so.

In passing upon the question of constitutionality, the court is mindful that the law today is progressive and that social conditions, economic changes and considerations of public welfare may require a court to change not only its own prior decisions but to refuse to follow decisions of higher courts, and this not upon the theory of making new law but upon the principle that the new decision declares what the law is, and that former decisions, either of its own or of higher courts which have held to the contrary, are not the law and never have been the law.

To declare a law unconstitutional, it must appear, even under the present conception of constitutional law, *either that the Legislature had no power to act upon the subject-matter, or having such power, it was exercised in an arbitrary, unreasonable, discriminatory or capricious manner, and that the methods adopted have no reasonable relation to the subject-matter or to the achievement of the result desired.*

In the case at bar there is no question but that the State Legislature had the power to regulate the art of healing regardless of what method the defendant used in such art. (See *Dent* v. *West Virginia*, 129 U. S. 114.) That proposition is so well established as to need no further citation. It has been sustained by all the courts and at all times, and even the defendant in his brief admits such to be the law. It is also true that the power to regulate does not include the power to prohibit.

The sole question, therefore, is whether the Legislature having the power, acted in a reasonable manner, without caprice and without being arbitrary or discriminatory, and whether the methods adopted have some reasonable relation to the results desired to be accomplished.

In the determination of that question *the only function of the court is to determine the reasonableness of the Legislature's belief in the existence of facts and conditions which they acted upon, and in exercising or performing that function the court has no occasion to consider whether all the facts which were the basis of the belief of the Legislature are well founded, and it has no right to weigh conflicting evidence.*

Upon that question the argument is made by the defendant, who is a chiropractor, that there has been a revaluation of his art of healing since the Education Law was enacted so as to require the court to hold that decisions by Legislatures of this State since the enactment of that law in refusing to make a special classification for his type in the art of healing have resulted in discrimination. He claims that changes in our social concepts, in our economic conditions, in our new attitude toward constitutional interpretation which today is based upon the sociological point of view rather than upon the legalistic theory, and new information concerning his method of treatment of disease, must and should impel the court to decide that the relevant provisions of the Education Law and the failure of the Legislature to classify his method of treatment has resulted in discrimination. He has marshalled in his brief a great many facts, data, statistics, information, testimony, etc., which he claims sustain this argument. He maintains that because of such facts and information, data, etc., the time has come when the court should say that the law is discriminatory because of the failure to make special provision for his type of healing. Substantially these facts are that chiropractic is now legally recognized in nearly every State of the Union; that scientific men have recognized its principles and its efficacy as a healing art; that thousands practice this art in most of the States of the Union where the same is regulated and permitted; that in this

State a great number are practicing even though not regulated; that patients in great numbers are being treated and want to be treated by this method, having recognized the same as an efficient method in the treatment of the ills of the human body; that law today is interpreted in an attitude based upon changed social conditions rather than merely following prior decisions. Added to this is the claim that the many exceptions contained in the law permitting limited practice has resulted in discrimination; has opened the door to others while prohibiting the defendant.

Assuming all that the defendant claims to be true as to the facts, and that these facts lead to the conclusion that chiropractic in 1934 is to be revalued and passed upon in the light of such change, and that it has improved and progressed as a healing art, it is nevertheless still true that it was within the province of the Legislature to pass upon the facts as they existed before it, and from these facts determine what qualifications and training defendant must have as a condition precedent to his being admitted to the practice of any art in the treatment of human ailments.

We must assume that all the facts and information and revaluations claimed by defendant appeared before the Legislature. We must also assume that there appeared before the Legislature other facts, namely, that the educational standards in the field of the treatment of the human body have been raised in the past three decades; that qualifications as to education, training, etc., are far greater today than they were when the law was enacted, and that year after year higher standards have been set up for those desiring to practice the art of healing, at least in New York State. It must have also appeared before the Legislature that the standards of education have been so elevated that it has become almost impossible to gain entrance into a medical school. It certainly appeared before the Legislature that the chiropractor claims to be able to diagnose and treat nearly all human ills. With such information and facts before the Legislature, it is conceivable that they had a reasonable belief in the existence of conditions which required the enactment of the present law and the refusal to grant a separate classification for chiropractic. If this court could say that the Legislature had no reasonable belief in the existence of facts which was the basis of its action or under no possible circumstances could the Legislature form such a belief, then would it be justified in declaring the law arbitrary and unreasonable. But enough appears to indicate that the Legislature did have a reasonable belief in the existence of facts which caused it to act as it did. It was within the province of the lawmakers to say to the defendant upon the facts appearing before them: " You are practicing the art of

healing; you claim to do exactly what the doctor of medicine does in the diagnosis and treatment of human disease and ailments; you claim that you can cure all manner and forms of disease, and even though you deny the germ origin of disease and believe that all ills originate with the impingement of nerves in the vertebræ, we demand that your preliminary qualifications and training should be the same as that which we require of the doctor of medicine. In other words, we say to you that you must have the same qualifications even though you have a different method in the treatment of disease, and even though you may never use some of the knowledge which you may acquire as a result of your preliminary training."

In effect, that is all that the Legislature has done through the present Education Law and its refusal to create a new classification for defendant. With such a decision on the part of the Legislature the courts cannot quarrel because there appears to be a reasonable basis for such action, namely, the reasonable belief in the existence of facts which required the enactment of the relevant provisions of the law. There appearing, therefore, a reasonable basis for the action of the Legislature, the court cannot hold that the relevant provisions are arbitrary or unreasonable. As the law stands today, it simply requires of the defendant that before he can practice his art of healing, he must comply with the same requirements as does the doctor of medicine. The refusal to amend the law to include defendant and give him a different classification than the doctor of medicine, based upon a training not as great as that required of the doctor of medicine, is no ground for declaring the present law unreasonable or discriminatory, especially if his claim be that he is doing exactly the same thing that the doctor of medicine is doing in diagnosing and curing disease even though by a different method. Whether the Legislature was wise in acting as it did upon such facts is no concern of the court. We are only concerned with the proposition as to whether facts appeared before it that justified the conclusion arrived at.

The defendant claims that as the law stands today he is prohibited absolutely from practicing his profession. If to require him to have the same qualifications and training as is required of the doctor of medicine is prohibition, then the argument is sound, but the answer is found in the fact that the Legislature had a right to place the same preliminary requirements upon him as upon the medical doctor, and his refusal to comply with such requirements is the cause of the prohibition, rather than the specified requirements of the Legislature. *To claim that it is arbitrary and unreasonable to place him in the same class as the*

*medical man, is not well founded if it appeared to the Legislature that there is not much distinction between what he claims he can do and what the doctor of medicine claims as to diagnosis and cure.* The only apparent differences are (1) as to the theory of the origin of disease, and (2) as to the method of cure.

The defendant further claims that the relevant sections of the Education Law having made a *classification* for osteopaths, dentists, chiropodists, etc., and not having made any provision for him, has resulted in discrimination; that because the door has been opened by the Legislature to the osteopath and to others limited in the art of healing as to method, etc., that, therefore, he has been discriminated against, and for that reason the law is unconstitutional, but here again facts and conditions appeared before the Legislature indicating that there was a reasonable basis for the separate classifications made by the Legislature. It at least had a reasonable belief in the existence of these facts. In the case of the osteopath, while his practice is limited in method, the qualifications and preliminary training required of him are almost co-extensive with that of the doctor of medicine, and there appears the further fact (in so far as that art of healing is concerned) that the osteopath is trained in schools approved by the Education Department of the State of New York in so far as its standards and curricula are concerned, while the schools of the chiropractic, because of limited curricula, are not recognized. There presumably appeared before the Legislature facts from which they could have arrived at the conclusion that the object desired, namely, proper treatment of human ailments, will not be prejudiced by letting in the osteopath because of the fact that he is trained in schools which require of him the study of those subjects which the medical doctor is required to study, and there must also have appeared before that body the fact that chiropractic schools do not provide for the same training.

If we can conceive of a state of facts showing a difference between the osteopath and the chiropractor, whether we agree with the facts or not, we are bound to hold that the law is reasonable and not discriminatory in its classifications; that such a state of facts can be conceived is apparent from the statements of facts in the briefs submitted to this court, namely, the method of preliminary training and qualifications, the first approved by the Education Department and the second apparently not.

It has been held time and time again that the power to classify in the adoption of police laws admits the exercise of a wide scope of discretion in the Legislature. *Only when there is no reasonable basis and it is purely arbitrary, may a classification be held to be unconstitutional. A classification having some reasonable basis does*

*not offend merely because it is not made with any mathematical nicety or because in practice it results in some inequality.* (See *Naudzius* v. *Lahr*, 253 Mich. 216; 74 A. L. R. 1189.)

In the case of *Bratberg* v. *Advance Rumeley Co.* (61 N. D. 452) the court said: " The 14th Amendment does not prohibit reasonable classifications of persons and things for the purpose of legislation, but such classification is distinctly contemplated by the amendment. The state may classify persons and objects for the purpose of legislation if classification is based on proper and justifiable distinction considering the purpose of the law. ' From the earliest days classification has been made by legislatures whereby some people have rights or suffer burdens which others do not. It has been said that it is the essence of a classification that on one class are cast duties and burdens different from those resting on the general public and that the very idea of classification is that of inequality. The mere fact that legislation is based on a classification and is made to apply to certain classifications and not to others does not affect its validity if it be so made that all persons subject to its terms are treated alike under like circumstances and condition.' "

In the case of *State Board of Tax Commissioners* v. *Jackson* (283 U. S. 527; 73 A. L. R. 1464), decided by the United States Supreme Court, it was said: " The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, * * * 'A very wide discretion must be conceded to the legislative power in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law ' * * *. Our duty is to sustain the *classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."* (See, also, *Silver* v. *Silver*, 108 Conn. 371; *Witt* v. *Peoples State Bank*, 166 S. C. 1; *Matter of Irish*, 121 Kan. 72; 250 Pac. 1056; *Standard Oil Co.* v. *Marysville*, 279 U. S. 582.)

While it is substantially true as argued by defendant that no New York case has directly had before it the question of constitutional law in the form and manner now raised by this defendant, it is nevertheless true that *People* v. *Mulford* (140 App. Div. 716); *People* v. *Ellis* (162 id. 288), and *People* v. *Allcutt* (117 id. 546) discuss the constitutionality of the Education Law and hold the relevant provisions constitutional. The new arguments and

new questions raised in the case at bar, while perhaps not having been used in the three above-mentioned cases, were passed upon in courts of other jurisdictions, and in every instance the contentions similar to that here used by the defendant were held as not sufficient ground for declaring their laws unconstitutional.

In the case of *Louisiana State Board of Medical Examiners* v. *Fife* (162 La. 681; 54 A. L. R. 594; affd., 274 U. S. 720) the question arose whether the defendant, who was a chiropractor, was practicing medicine, and if he did, whether he came under the laws of that State prohibiting the practice of medicine unless certain requirements were complied with.

The court, after arriving at the conclusion that to practice chiropractic is to practice medicine, said: " But defendants contend that the statute, as amended, is unconstitutional. Their contention is that to require them to stand an examination in surgery and materia medica, and perhaps in other things, is to require them to be qualified in subjects for which they and those who practice chiropractic have no need, and which bear no relation to that system, and since the effect of these requirements is to virtually suppress the practice of chiropractic in this State, they plead that the statute deprives them of liberty and property without due process of law in violation of the Constitutions of this State and the United States."

After discussing the right of the State to regulate the practice of medicine and declaring that the State has no right to require the study of *irrelevant* subjects, but only such subjects as have a reasonable relation to the practice of medicine, and after setting forth in its decision that the court has arrived at the conclusion the defendant has no constitutional ground to complain by reason of the fact that before being permitted to treat the sick he must make it appear, in the manner prescribed by law, that he has an adequate knowledge of materia medica and surgery and of other subjects required by the act, the court says (54 A. L. R. 599): " Defendants do not complain that these exceptions, in favor of osteopaths, dentists, chiropodists and trained nurses make the Act of 1914, as amended, unconstitutional, but their complaint is that the Act is unconstitutional because it discriminates against them by not granting them similar privileges, but requires them to take the full medical and surgical course. If the Legislature were called upon to recognize every school of medicine and to deal with it as such, requiring nothing but what the system practised by each school demands, there might be some force to defendant's contention, but, as we have held, the Legislature is not called upon to do so, but has a reasonable discretion as to whether a particular school

should be recognized and special provision made for it. Since the Legislature has such discretion, defendants cannot complain, on the ground of being unjustly discriminated against, because the Legislature has not deemed proper to recognize their school of medicine, and make special provision for those desiring to practice that system, by prescribing a course of study in accord with the theories which it holds for restoring health."

Other cases in which statutes of similar import were sustained are as follows: *People* v. *Lewis* (233 Mich. 240; 206 N. W. 553); *Commonwealth* v. *Zimmerman* (221 Mass. 184); *Crane* v. *Johnson* (242 U. S. 339); *People* v. *Walsh* (346 Ill. 52); *State* v. *Smith* (127 Ore. 680; 273 Pac. 343).

This court is of the opinion that the Legislature had facts before it from which a *reasonable belief* could be formed which warranted the enactment of the relevant sections of the Education Law, and its refusal to make any further classifications so as to let in the defendant, and for that reason this court cannot and will not say that these provisions of the Education Law are unconstitutional. In making this decision the court desires to emphasize the fact that it does not pass upon the wisdom of the Legislature in doing what it did and in its failure to make special classification for defendant, nor does it in the slightest degree pass upon chiropractic as a healing art. It may be, as far as the court knows, just as sound in theory and just as efficacious in practice as the art of medicine. What the court does say is that as the record stands it is for the Legislature to determine under what conditions chiropractic may be let in.

Considering, therefore, the demurrer as a motion to dismiss, I deny this motion.