(No. 22305.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LESTER TILTON *et al.* Plaintiffs in Error.

*Opinion filed June 15, 1934.*

LOUIS GREENBERG, for plaintiffs in error.

48

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiffs in error, Lester Tilton and Harry De Joannis, were charged by indictment with conspiracy to practice medicine without license and upon a trial were convicted, the jury fixing their punishment at imprisonment in the penitentiary and a fine of $2000 each. The judgment was affirmed by the Appellate Court for the First District, and the case is here on writ of error to that court.

The indictment, which originally consisted of six counts, was *nolle prossed* except as to the third and fourth counts, on which the defendants were tried. The trial court overruled a motion to quash these two counts, which action is assigned as error. It is also urged that the court erred in giving a certain instruction to the jury as to the form of their verdict. These are the only two points presented for decision.

It is first argued by the defendants that the third count should have been quashed because it charges a common law conspiracy but enumerates acts which they were charged with conspiring to commit which were not crimes at the common law but are only so by statute. It is their contention that inasmuch as the practice of medicine without a license was not a crime at common law the defendants cannot be convicted under a common law form of indictment for a conspiracy to do such acts. It is charged in this count that the defendants conspired to assist Lester Tilton in holding himself out to the public as being engaged in the diagnosis and treatment of human ailments, particularly cancer, and in professing to prescribe for and heal cancer and maintaining an office for such purpose,

including the examination and treatment of patients having cancer, and in holding himself out as being a physician by using the words "Doctor," "Physician" and the title "M. D.," Tilton not being a licensed physician. Inasmuch as the doing of these acts is expressly forbidden by section 24 of the Medical Practice act, (Cahill's Stat. 1933, p. 1806,) it is impossible to find any merit in the defendants' argument. A criminal conspiracy at common law may involve either the doing of an unlawful act by any means or any act by unlawful means, and this count properly charges a common law conspiracy. (*Smith* v. *People,* 25 Ill. 9; *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 214 id. 421; *People* v. *Curran,* 286 id. 302.) The same authorities establish the principle that an agreement to do an act made unlawful by statute may be a common law conspiracy.

The fourth count of the indictment is based upon section 46 of the Criminal Code and alleges that Tilton did not possess a license to practice medicine, as required by the Medical Practice act; that he and others conspired to do certain illegal acts injurious to the public health, and it sets forth the same acts as the third count. It is urged that conspiring to hold out another having no license to practice medicine as being duly qualified to treat human ailments is not injurious to the public health and is not related to the subject of a public health law; that cancer is not a contagious or infectious disease, and although prescribing for it may be injurious to the individual it is not so to the public in general. The Medical Practice act was designed and intended to better protect the public health, which purpose is stated in the act and has been recognized and upheld by this court. (*People* v. *Walsh,* 346 Ill. 52; *People* v. *Witte,* 315 id. 282.) In our opinion it is as much in the interest of the public health that individuals should be protected from quacks who have no proper medical qualifications, preying upon the credulous but incurably sick, as

it is to protect congested areas against the sweep of an infection. That the cases may be isolated renders them of no less interest to the public. In *People* v. *Walsh, supra,* we said: "Due consideration, therefore, for the protection of society may well induce the State to exclude from practicing the treatment of human ailments those who have not such a license or who are found upon examination not to be fully qualified." The *gravamen* of the offense charged by this count is to be found in the plan to unlawfully hold out to the public that Tilton was qualified and competent to successfully treat cancer in human beings. It is this public holding out—this seeking for victims from among the general public—that constitutes the public injury, and it is precisely this kind of a public injury that our Medical Practice act is intended to prevent.

The statute upon which the fourth count of the indictment is founded, (section 46 of the Criminal Code,) in so far as it is material here, provides that "if any two or more persons conspire or agree together * * * to do any illegal act injurious to the public health," etc., they shall be guilty of conspiracy. This act was passed in 1874 and the Medical Practice act in 1923. It is argued for the defendants that inasmuch as the specific acts set forth in the indictment were not denounced as crimes until several years after the act under which they were indicted was passed they cannot be held. They say, in effect, that under established rules of strict construction applicable to penal and criminal laws, a penalty is not incurred unless the act that subjects one to it is clearly within the letter and spirit of the statute imposing such penalty. Numerous cases are cited in support of this argument, but since we agree with the general principle it would be useless to discuss them. The point in this case which defendants either overlook or evade is that the acts for which they are being punished are clearly within both the letter and spirit of the act of 1874. At common law it was not necessary that the object

of a conspiracy should constitute a criminal act. (*People* v. *Curran, supra; Smith* v. *People, supra.*) The gist of the offense is the unlawful agreement. (*Dealy* v. *United States,* 152 U. S. 539.) The statute now before us defines the offense of conspiracy as an agreement to do *any* illegal acts injurious to the public health and not any particular acts, and under it a conviction may be had whether the illegal acts specifically alleged are made so by statute or were so at common law. In *Curley* v. *United States,* 130 Fed. 1, the defendants conspired to have one of them unlawfully take a civil service examination for the other. The same contention was raised in that case as in this one, in connection with an act of Congress which in substance provided that if two or more persons should conspire together to commit any offense against the United States or to defraud the United States in any manner or for any purpose they should be guilty of conspiracy and punished accordingly. The United States Circuit Court of Appeals held that it was the intention of Congress not only to meet situations existing at the time the act was passed but to provide for future statutory offenses and frauds. The decision in that case was made final through denial of *certiorari.* (195 U. S. 628.)

It is our opinion and holding that the trial court did not err in overruling the motion to quash the indictment or either of its counts.

It is finally contended that the court erred in giving an instruction as to the form of a verdict of guilt. The instruction on this point permitted the jury one of three forms: (1) To find the defendants guilty without fixing any punishment; (2) to find them guilty with imprisonment in the penitentiary and a fine; or (3) to find them guilty with imprisonment in the penitentiary without a fine. It is urged that the jury should also have been instructed that they might fix punishment by imprisonment in the county jail. This precise question has been passed upon

52

by us in *People* v. *Schneider*, 345 Ill. 410, where we held exactly opposite to the contention now made by the defendants. The court did not err in this respect.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*