THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* EARL TETER, Defendant.

Magistrates' Courts of the City of New York, Borough of Manhattan, August 31, 1962.

*Mudge, Stern, Baldwin & Todd* (*Paul D. Miller* and *Robert P. Shaughnessy* of counsel), for defendant. *Albert E. Felix* for Anti-Vivisection League, complainant.

WALTER J. BAYER, M. To strike down subdivision 2 of section 195-a of the Penal Law,* on constitutional grounds is the plea of this defendant. He moves to dismiss the complaint urging that this statute violates the commerce clause (U. S. Const., art. I, § 8), and the due process clauses of both the Federal and New York Constitutions. (U. S. Const., 14th Amdt.; N. Y. Const., art., I, § 6.)

---

* The pertinent provisions of section 195-a of the Penal Law are:

"§ 195-a. Operating upon tails of horses unlawful.

"1. Any person who cuts the tissue, tissues, muscle or muscles of the tail of any horse, mare or gelding, or otherwise operates upon it in any manner for the purpose or with the effect of altering the natural carriage of the tail, except when such cutting or operation is necessary for the health or life of said animal, as certified to in writing by a licensed veterinarian; and any person who causes, procures or knowingly permits such cutting or operation to be done, and any person who assists in or is voluntarily present at such cutting or operation, shall be guilty of a misdemeanor.

"2. Any person who owns or possesses, or shows or exhibits at any horse show or other like exhibition in this state, a horse, mare or gelding the tail of which has been so cut or operated upon shall be guilty of a violation of this section, whether the cutting or operation has been performed within or without the state of New York. The provisions of this section shall not apply ⁕ ⁕ ⁕ where the cutting or operation was necessary for the life or health of the horse; provided, the owner has procured the required affidavit to establish that fact, which affidavit shall be produced and exhibited to any peace officer, upon request, at all reasonable times. If any horse, mare or gelding is offered for entry at any horse show or other exhibition, and the tail of such animal has been cut or operated on as described in this section, the affidavit herein provided for shall be exhibited to the secretary of the association conducting the show as a prerequisite to acceptance of the entry, and such affidavit must be accessible to any peace officer during the period of the show."

Defendant, stable manager for Dodge Stables at the National Horse Show, is charged with a violation of subdivision 2 of section 195-a of the Penal Law, in that on November 2, 1960, he exhibited at the National Horse Show at Madison Square Garden horses whose tails had been cut in such a manner as to alter the natural carriage of the tail when it was not necessary for the health or life of the said animals, and that defendant knew that their tails had been cut.

Despite the court's view that few indeed are those who could possibly be caught in this statute's prohibitions, defendant's direct challenge to it cannot be shunted aside or ignored. Section 195-a covers a narrow area where the Congress has not acted. But, inroads by States upon interstate affairs '' are individually too petty, too diversified, and too local to get the attention of a Congress hard pressed wtih more urgent matters. The practical result is that in default of action by us they will go on suffocating and retarding and Balkanizing American commerce, trade and industry ''. (*Duckworth* v. *Arkansas,* 314 U. S. 390, 400 [JACKSON, J.].) Also, from the very beginning the power to regulate Commerce * * * among the several States '' (U. S. Const., art. I, § 8, cl. 3), '' — Chief Justice MARSHALL held, was the power to ' govern ' not merely transportation of merchandise across state lines but any ' intercourse ' which ' concerns more states than one ' ''. (National and State Power with Respect to Interstate Commerce — Conflict in the Court — Mendelson — Univ. of Chicago Press [1961], p. 98, referring to *Gibbons* v. *Ogden,* 9 Wheat. [22 U. S.] 1 [1824].)

As stipulated by the parties, the court finds that defendant is a resident of Lexington, Kentucky; he is employed at such location by Castleton Farm, Dodge Stables Division; the horse or horses he is charged with exhibiting at the Horse Show are ordinarily stabled at Castleton Farm in Kentucky; such horse or horses were brought into New York State for the sole purpose of being exhibited at the Horse Show at Madison Square Garden in November, 1960; and such horse or horses are owned by nonresidents of the State of New York. No contention is made that the tails of the horses concerned were operated on within the State of New York, but rather reliance is placed by complainant on the wording of the statute in that it prohibits the ownership, possession, showing or exhibiting in this State of horses operated upon " within or without " this State.

Although this court, as a court of inferior jurisdiction, should and here does, proceed cautiously when asked to rule upon the constitutionality of legislative enactments (*People* v. *Wright,* 12 Misc 2d 961, 963), it is clear that the court not only has the

power, but as emphasized above, is indeed called upon, where a statute clearly oversteps constitutional limitations to declare its invalidity. (*People* v. *Marcello,* 25 N. Y. S. 2d 533; *People* v. *Mestichelli,* 18 N. Y. S. 2d 406; *People* v. *Princeton, Inc.,* 154 Misc. 811; see, also, *People* v. *Lee,* 151 Misc. 431, 434.)

In the face of inertia of Congress, the potency of the commerce clause varies under the differing views of the Justices of the Supreme Court. Fervent espousal of freedom of the national market is made by Mr. Justice JACKSON, claiming it to be a cornerstone of our democracy. " Our system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will withhold his exports, and no * * * state will by customs duties or regulations exclude them. Likewise, every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any. Such was the vision of the Founders ". (*Hood & Sons* v. *Du Mond,* 336 U. S. 525, 539.)

On the other hand, it is said that Congress' failure to act gives freedom to the local government to do so — a complete espousal of States' rights. (See dissenting opinion of Mr. Justice BLACK, *Hood & Sons* v. *Du Mond, supra,* p. 550.) And, finally " Between these extremes Mr. JUSTICE FRANKFURTER (and perhaps most of his colleagues) finds ' the basic function of this Court as the mediator of powers within the federal system.' In litigation involving impositions upon interstate commerce, the Justice follows the same balancing-of-interests technique that he uses in other cases. The claims of a national market must be weighed against those of local self-government. On the one side is the danger of Balkanization; on the other the scourge of outside interference with local affairs." (Conflict in the Court, Mendelson, *supra,* p. 105.)

Thus, in *Hood & Sons* v. *Du Mond,* Mr. Justice FRANKFURTER (p. 564) was " constrained to dissent because " he could not " agree in treating what is essentially a problem of striking a balance between competing interests as an exercise in absolutes. Nor does it seem * * * that such a problem should be disposed of on a record from which we cannot tell what weights to put in which side of the scales."

At once, then, this court is thrown into the conflict which has sharply split the Supreme Court — and perforce must follow one of these paths.

Except for the unreported case of *People* v. *Hoge* (Special Sessions, N. Y. Co., Cal. Nos. 23–26, Inf. Nos. 4730–4733),

wherein the informations were dismissed on the ground that the legislation went beyond permitted State power, no New York authority has been found. However, *Stubbs* v. *People* (40 Col. 414, 435–436), strikingly similar on the facts to the case here, fully discusses the constitutional aspects of State encroachment upon the national market and holds "the horses were lawfully docked in the state where it was permitted. They were articles of commerce; they were the property of the owners * * * the state has not the power or authority to destroy that property. The prevention of its use amounts to a destruction of the thing itself."

This statute no doubt was predicated upon the possible offensiveness arising from viewing horses whose tails have been cut or altered. To justify however, its impact upon interstate commerce requires more than mere offensiveness to taste. As was pointed out in *Stubbs* v. *People* (*supra*) is seeing a horse with a docked tail more offensive than seeing an intoxicated person or a person smoking cigarettes? In the latter situations the Supreme Court has held statutes prohibiting the importation of liquor and cigarettes as violative of the commerce clause. Is the exhibition of a horse with a docked tail more detrimental to public health or public morals or public safety than is drinking or smoking?

The rationale of the exercise of the police power is most aptly put in *Railroad Co.* v. *Husen* (95 U. S. 465, 472): "'While we unhesitatingly admit that a State may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders; while it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, etc., from entering the State; while for the purpose of self-protection it may establish quarantine and reasonable inspection laws, it may not interfere with transportation into or through the State, beyond what is absolutely necessary for its self-protection. It may not, under the cover of exerting its police powers, substantially prohibit or burden either foreign or interstate commerce. * * * The reach of the statute was far beyond its professed object, and far into the realm which is within the exclusive jurisdiction of Congress. * * * The police power of a State cannot obstruct foreign commerce or interstate commerce beyond the necessity for its exercise; and under color of it, objects not within its scope, cannot be secured at the expense of the protection afforded by the Federal Constitution. And as its range sometimes comes very near to the field committed by the Constitution to Congress, it is the duty of the courts to guard

vigilantly against any needless intrusion.' " (See, also, *Bowman* v. *Chicago & Northwestern Ry. Co.*, 125 U. S. 465, 492.)

Of the foregoing trifurcated constitutional interpretations, this court under the circumstances presented here, finds persuasive the view of the majority in *Hood & Sons* v. *Du Mond* (*supra*). The court therefore holds subdivision 2 of section 195-a, as applied here, violates the commerce clause of the Federal Constitution. Accordingly, the complaint is dismissed and the defendant is discharged.

