OPINION OF THE COURT
Phylis Skloot Bamberger, J.
The defendants Katie Sher and Antonio Escriva are charged, inter alla, with unauthorized practice of a profession (medicine) (Education Law § 6512 [1]; § 6521) based on the allegation that between November 1, 1986, and February 1, 1990, Sher, a doctor, aided and abetted Escriva, who is not a licensed physician, in the unauthorized practice of medicine. *195 The defendants contend that this count is duplicitous. Relying primarily upon People v Firth (157 App Div 492 [2d Dept 1913]), People v Ellis (162 App Div 288 [2d Dept 1914]), and People v Lee (151 Misc 431 [Ct Spec Sess, Westchester County 1934]), the prosecutor responds that the unauthorized practice of medicine is a continuing offense and therefore this count of the indictment is valid. The motion to dismiss is granted.
Under CPL 200.30 (1), each count of an indictment "may charge one offense only.” When "a crime is made out by the commission of one act, that act must be the only offense alleged in the count.” (People v Keindl, 68 NY2d 410, 417 [1986]; People v Algarin, 166 AD2d 287 [1st Dept].) If an offense that is completed by a single act is charged and one count of the indictment alleges the commission of that act occurring repeatedly during a designated time period, that count encompasses more than one offense and is duplicitous. (People v Keindl, 68 NY2d, at 417-418; see also, People v Beauchamp, 74 NY2d 639, 640-641 [1989]; People v Algarin, supra, at 287-288.) However, if a series of acts may properly be treated as "one continuous crime”, a count alleging this crime is immune from the proscription against duplicitous counts contained in CPL 200.30. (People v Keindl, 68 NY2d, at 420-422.)
The test to determine if a particular crime is a continuing offense is whether the language of the criminal statute involved prohibits individual acts or a course of conduct manifested by a series of acts. The focus of analysis is on whether the legislative intent is to punish discrete acts or a course of conduct. (People v Okafore, 72 NY2d 81, 86 [1988].) To perform the analysis in this case, it is necessary to trace the statutory provisions involving unauthorized practice of medicine and then turn to the case law.
The practice of medicine was not defined at common law and originally it was not a crime to practice medicine without a license. (People ex rel. Bennett v Laman, 250 App Div 660, 662-663 [3d Dept 1937], revd on other grounds 277 NY 368 [1938]; Benedict, Pirro & Pisani, Acupuncture: The Practice of Medicine?, 38 Alb L Rev 633, 643, n 62 [1974].) The practice of medicine was first regulated in 1887, when the Legislature passed a public health law requiring that a practitioner meet certain qualifications and obtain a license to practice medicine (L 1887, ch 647). What constitutes the "practice of medicine” was first defined by the Legislature in 1907 as follows: "A person practices medicine within the meaning of this act, *196 except as hereinafter stated,[1] who holds himself out as being able to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate, or prescribe for any human disease, pain, injury, deformity, or physical condition.” (L 1907, ch 344, § 1 [7].) At the same time, another provision of the 1907 law made it a misdemeanor to practice medicine without a license. (L 1907, ch 344, § 15.) In 1909, these two sections were codified in Public Health Law § 160 (definition) and § 174 (penalty). (L 1909, ch 49.)1 [2]
In 1927, the definition of the practice of medicine was transferred without amendment from the Public Health Law to the Education Law. The definition was placed in section 1250 (7) of the Education Law. (L 1927, ch 85, § 1.) The penalty provision was moved from section 174 of the Public Health Law to section 1263 of the Education Law. A massive reorganization of the Education Law was undertaken in 1947. The definition of the practice of medicine was moved to section 6501 (4) of the Education Law and it remained unchanged from what it had been in 1907, when originally adopted. At the same time, the penalty provision was moved from section 1263 of the Education Law to section 6513 of that statute. (L 1947, ch 820, § 1, at 2005, 2016-2017.)
In 1971, as part of a second reorganization of the Education Law, the definition of the practice of medicine was moved to section 6521 of the Education Law and rewritten in its current form. The penalty provision was placed in section 6512 of the Education Law, a general provision that prohibits the unlicensed practice of any profession governed by the Education Law. (L 1971, ch 987, § 2, at 2349.) The definition of the practice of medicine now reads: "The practice of the profession of medicine is defined as diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition.” (Education Law § 6521.) The unauthorized practice of medicine is punished as a class E felony. (Education Law § 6512.)
Although the definition of the practice of medicine is writ *197 ten differently now than it was in 1907, the Bill Jacket accompanying the 1971 law indicates quite clearly that the Legislature meant to make no substantive change in the law.[3] (See, L 1971, ch 987, § 4 [3].) Rather, the purpose of the 1971 reorganization was to make uniform the provisions regulating the general practice of the 20 professions licensed by the New York State Department of Education and to simplify enforcement.[4]
The goal, according to the Bill Jacket, was to revise the law to make its provisions more concise. (Governor’s Bill Jacket, L 1971, ch 987, at 5, 7, 8, 23.)[5]
The first analysis of the legislative intent underlying the statute prohibiting the unauthorized practice of medicine (Public Health Law § 160) appeared in 1913 in People v Firth (157 App Div 492, 494-496, supra). The Second Department held that then section 160 was designed to prohibit a course of conduct, not individual acts, without referring to anything other than the ordinary dictionary definition of "practice”, the court held that the unlawful practice of dentistry was a continuing crime: "It is a practice, not an act as distinguished therefrom, with which the defendant is charged, and which the statute forbids. Practice results from a series of acts” (supra, at 493-494). The rationale of Firth was followed in 1913 in People v Silver (158 App Div 217, 218-219 [2d Dept]), and in 1914 in People v Ellis (162 App Div 288, 290, supra).
However, in 1919, six years after Firth (supra) was decided, the Court of Appeals, in People v Devinny (227 NY 397 [1919]), *198 held that Public Health Law §§ 160 and 173, which together defined and proscribed the unauthorized practice of medicine, criminalized the individual acts defined by section 160 and did not create a continuing offense (supra, at 404).
In Devinny (supra, at 400), the defendant was charged with unlawful practice of medicine in an indictment that did not specifically name either the people Devinny treated or the acts he performed. The prosecution maintained that this omission was not fatal because the indictment charged a continuing offense and it was therefore not necessary to set out each act that constituted the crime charged.[6] The Court of Appeals, looking to the statutory definition of practice, not its ordinary meaning, rejected this argument: "It does not seem to us that the statute was intended to define or constitute the prohibited offense as consisting of a continuous series of acts amounting to the conduct of a business within the decisions referred to. It may be that if we had nothing but section 161 prohibiting the 'practice’ of medicine and were relegated to the dictionary or common usage for a definition of that word we should be compelled to interpret it as meaning a continued and habitual performance of acts. But we are not thus left to these means of reaching a definition. Section 160 defines what 'practice’ means. Its meaning is satisfied whenever and as often as an individual 'holds himself out as being able to * * * and offers or undertakes to diagnose, treat,’ etc. Whenever within the fair meaning of those terms on a single occasion an offender has held himself out as able to and has offered to treat a patient there has been a completed offense and it is not necessary to show that this operation has been repeated so many times that it has ripened into a habit or business” (supra, at 403-404).
The prosecutor contends that Devinny’s interpretation of the definition was changed in 1926, when the Legislature revised Public Health Law § 174, the penalty provision that accompanied the definition of the practice of medicine (L 1926, ch 834, § 9). The flaw in this contention is twofold. First, Devinny (supra) interpreted the definitional provision of the Public Health Law, section 160, but the revision affected the penalty provision, section 174. As demonstrated by the review of the *199 legislative history, the Legislature did not amend the definition of the practice of medicine from the time it adopted it in 1907 until 1971 when it then deleted only the repetitive language found in the definition. Thus, the 1926 revision was not intended to change the legislative intent found by Devinny.
Second, when the 1926 revision is examined, it is evident that far from overruling Devinny (supra) the revision reinforced the statutory construction applied by the Court of Appeals. In 1926, the Legislature added the following sentence to subdivision (5) of section 174: "It shall be necessary to prove in any prosecution or hearing under this article only a single act prohibited by law or a single holding out or an attempt without proving a general course of conduct, in order to constitute a violation.” (L 1926, ch 834, §9.) The sentence closely parallels the last sentence of Devinny quoted previously. The 1926 law was designed to reverse the result of People v Silver (158 App Div 217, supra) which relying upon Firth (157 App Div 492, supra), had held that proof of a single act would not make out the crime of unauthorized practice of medicine. There is nothing in this revision that suggests that it was designed to change the meaning of the statutes given by Devinny (227 NY 397, supra).[7] ***11
The court concludes, therefore, that the unauthorized practice of medicine is not a continuing offense and that the count, which charged that the offense occurred repeatedly during a period of over three years, includes more than one offense and is duplicitous. (People v Keindl, 68 NY2d 410, 417-418, supra.) Accordingly, it is dismissed with leave to re-present as separate crimes.
[Portions of opinion omitted for purposes of publication.]

1. The exceptions listed were not significant to the discussion here. They covered, among other things, United States Army medics, doctors from foreign countries and sister States, and furnishing medical assistance in an emergency. (L 1907, ch 344, § 14.)

. This law was published separately from the Session Laws of 1909 by virtue of Laws of 1909 (ch 458).

. For instance, the Assembly-member and the Senator who sponsored the bills that became law submitted a memorandum, which states in pertinent part: "While the provisions referring to the scope and practice of each profession have not undergone substantive change, the majority of the definitions have been revised to make them more concise. To assure that such revisions have not changed the meanings, section six of this bill provides that the new title does not affect or modify the scope of practice in any profession as it existed prior to the enactment of the bill.” (Letters of Assemblyperson Constance Cook and Senator Thomas Laverne, Governor’s Bill Jacket, L 1971, ch 987, at 8,15.)

. This purpose was accomplished largely by grouping the statutory regulations regarding each profession. For instance, under Laws of 1971, ch 987, §2, medicine was governed by Education Law §§ 6520-6527, physical therapy by sections 6530-6536, chiropractic by sections 6550-6556, dentistry and dental hygiene by sections 6600-6611, veterinary medicine by sections 6700-6706, nursing by sections 6900-6908, podiatry by sections 7000-7006, optometry by sections 7100-7106, and so on.

. Letter of Attorney-General, Governor’s Bill Jacket, L 1971, ch 987, at 4-5; see also, letters cited n 3.

. The headnote shows the prosecution relied upon People v Firth (157 App Div 492) in making this argument. However, the opinion does not cite Firth.

. After People v Devinny (227 NY 397) was decided, two cases held that the unauthorized practice of medicine, as defined in former Education Law § 1263, was a continuing crime: People v Dennis (271 App Div 526 [2d Dept 1946]); People v Lee (151 Misc 431). Another case implied that the crime was a continuing one. (See, People ex rel. Seligson v Anderson, 50 NYS2d 856 [County Ct 1944].) These cases are not controlling because they are in conflict with the Court of Appeals holding, which was not even cited.
This court notes that the Second Department recently upheld the imposition of consecutive sentences for two acts of unauthorized practice of dentistry thereby implicitly rejecting any argument that consecutive sentences were impermissible on the theory that the unauthorized practice of dentistry is a continuing crime. (People v Gelb, 157 AD2d 667, 668 [2d Dept], lv granted 75 NY2d 919 [1990].)